# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILFRED KEYSER and REID KLOOTWYK, Derivatively on Behalf of DESKTOP METAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> RIC FULOP, JAMES HALEY, ALI EL-SIBLANI, BILAL ZUBERI, DAYNA GRAYSON, JEFF IMMELT, LEO HINDERY, JR., SCOTT DUSSAULT, STEPHEN NIGRO, STEVE PAPA, WEN HSIEH, JAMES EISENSTEIN, BYRON KNIGHT, and ANDY WHEELER <br><br> Defendants. | Civil Action No.: 1:22-cv-11117 <br><br> **VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT** |

Plaintiffs Wilfred Keyser and Reid Klootwyk (together, "Plaintiffs"), by and through their counsel, derivatively on behalf of Nominal Defendant Desktop Metal, Inc. ("Desktop Metal" or the "Company"), submit this Verified Stockholder Derivative Complaint against the Individual Defendants (defined herein) and allege the following upon information and belief, except as to those allegations concerning Plaintiffs, which are alleged upon personal knowledge. Plaintiffs' information and belief is based upon, among other things, their counsel's investigation, which included, *inter alia*, review and analysis of: (i) regulatory filings made by Desktop Metal with the U.S. Securities and Exchange Commission ("SEC"); (ii) press releases issued and disseminated by Desktop Metal; (iii) a purported class action lawsuit filed in the United Stated District Court for the District of Massachusetts against Desktop Metal and Defendants Ric Fulop ("Fulop"), James Haley ("Haley"), and Ali El-Siblani ("El-Siblani") captioned *Luongo v. Desktop Metal, Inc., et. al.*, Case No. 1:21-cv-12099, alleging violations of the anti-fraud provisions of the federal

securities laws based on the alleged issuance of false and misleading statements of material fact, and the alleged omission to state material facts necessary to make other statements made not misleading, between March 15, 2021 and November 15, 2021 (the "Relevant Period") with respect to deficiencies in EnvisionTEC Inc. and certain of its affiliates' (collectively "EnvisionTEC") manufacturing and product compliance practices and procedures (the "Securities Class Action"); and (iv) other publicly available information, including media and analyst reports, concerning Desktop Metal.

## NATURE OF THE ACTION

1.      This is a stockholder derivative action asserting claims for breach of fiduciary duty and violations of Section 14(a) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), and SEC rule 14a-9 promulgated thereunder brought on behalf of nominal defendant Desktop Metal against certain officers and members of the Company's Board of Directors (the "Board").

2.      Desktop Metal purports to offer additive manufacturing technologies focused on the production of end use parts. Its platforms include: Production System, a manufacturing platform using the Company's proprietary Single Pass Jetting technology enabling production quantities of up to millions of parts per year; Shop System, an affordable turnkey binding jetting platform to bring metal 3D printing to machine and job shops; Studio System, an office-friendly metal 3D printing system; and Fiber, a desktop 3D printer using the Company's proprietary Micro Automated Fiber Placement.

3.      On February 16, 2021, the Company acquired EnvisionTEC, a provider of volume production photopolymer 3D printing solutions for end use parts.

4.      On November 8, 2021, after the market closed, Desktop Metal disclosed that it was conducting an internal investigation into certain matters, including "manufacturing and product

compliance practices and procedures with respect to a subset of its photopolymer equipment and materials at its EnvisionTec US LLC facility." The Company also stated that the Chief Executive Officer ("CEO") of EnvisionTec US LLC had resigned.

5.     On this news, the Company's stock fell $0.39, or 4%, to close at $8.81 per share on November 9, 2021.

6.     Then, on November 15, 2021, after the market closed, the Company stated that it would notify the U.S. Food and Drug Administration ("FDA") of "compliance issues with certain shipments of EnvisionTEC's Flexcera dental resins and its PCA4000 curing box."

7.     On this news, the Company's stock fell $1.19, or 15%, to close at $6.83 per share on November 16, 2021, on unusually heavy trading volume.

8.     Throughout the Relevant Period, the Individual Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, the Individual Defendants failed to disclose to investors that: (1) there were deficiencies in EnvisionTEC's manufacturing and product compliance practices and procedures; (2) the foregoing deficiencies presented a material risk to the commercialization of EnvisionTEC's products; and (3) as a result of the foregoing, the Individual Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

9.     The Individual Defendants breached their fiduciary duties of loyalty, good faith, due care, oversight, and candor by knowingly engaging in the deceptions alleged herein.

10.     As a direct and proximate result of the Individual Defendants' breaches of fiduciary duties, the Company has sustained damages as described below.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because the Complaint alleges a claim for violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9.  The Court has supplemental jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367(a) because the state law claims form part of the same case or controversy.  This action is not a collusive action designed to confer jurisdiction on the court of the United States that it would not otherwise have.

12.     This Court has jurisdiction over each defendant because they reside in this District or have sufficient minimum contacts with this District to render the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.  The Court has personal jurisdiction over the nominal defendant because it is authorized to do business in this state and has consented to service in this state.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because one or more of the defendants either resides in or maintains offices in this District, a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein and violation of fiduciary duties owed to Desktop Metal occurred in this District, and defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

14.     Plaintiff Wilfred Keyser is a stockholder of Desktop Metal, was a stockholder of Desktop Metal at the time of the wrongdoing alleged herein, and has been a stockholder of Desktop Metal continuously since that time.

15.     Plaintiff Reid Klootwyk is a stockholder of Desktop Metal, was a stockholder of Desktop Metal at the time of the wrongdoing alleged herein, and has been a stockholder of Desktop Metal continuously since that time.

16.     Defendant Desktop Metal is incorporated under the laws of Delaware with its principal executive offices located in Burlington, Massachusetts. Desktop Metal's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "DM."

17.     Defendant Fulop has served as the Company's CEO since the incorporation of Desktop Metals in 2015.

18.     Defendant Haley has served as the Company's Chief Financial Officer and Treasurer since February 2021. Haley previously served as the Vice President of Finance from August 2020 until February 2021.

19.     Defendant El-Siblani was a director of the Company from February 2021 to November 2021. He was CEO of EnivisionTec US LLC from 2002 to November 2021.

20.     Defendant Bilal Zuberi ("Zuberi") has served as a member of the Company's Board since April 2016. Defendant Zuberi serves as a partner at Lux Capital, a venture capital firm he joined in 2013. He is a member of the Board's Audit Committee.

21.     Defendant Dayna Grayson ("Grayson") has served as a member of the Company's Board since October 2015. Ms. Grayson is a Managing Partner of Construct Capital, a venture capital firm she co-founded in 2020. She is the Chair of the Board's Compensation Committee.

22.     Defendant Jeff Immelt ("Immelt") has served as a member of the Company's Board since June 2018. Mr. Immelt serves as Venture Partner at New Enterprise Associates, a venture capital firm he joined in 2018. He is a member of the Board's Audit Committee.

23.     Defendant Leo Hindery, Jr. ("Hindery") has been a member of the Company's Board since December 2020 when Desktop Metal merged with Trine Acquisition Corp., a special purpose acquisition company led by Defendant Hindery.

24.     Defendant Scott Dussault ("Dussault") has served as a member of the Company's Board since December 2020. He is the Chair of the Board's Audit Committee.

25.     Defendant Stephen Nigro ("Nigro") has served as a member of the Company's Board since December 2020.

26.     Defendant Steve Papa ("Papa") has served as a member of the Company's Board since June 2016. He is Chair of the Board's Nominating and Corporate Governance Committee.

27.     Defendant Wen Hsieh ("Hsieh") has served as a member of the Company's Board since April 2016. Mr. Hsieh serves as General Partner of Kleiner Perkins Caufield & Byers ("KPCB"), a venture capital firm he joined in 2006. He is a member of the Board's Compensation Committee.

28.     Defendant James Eisenstein ("Eisenstein") has served as a member of the Company's Board since July 2021.  He is a member of the Board's Nominating and Corporate Governance Committee.

29.     Defendant Byron Knight ("Knight") was a member of the Board from the Company's business combination with Trine Acquisition Corporation on December 9, 2020 through July 2021.

30.     Defendant Andy Wheeler ("Wheeler") was a member of the Board from the Company's business combination with Trine Acquisition Corporation on December 9, 2020 through July 2021.

31.     Defendants Fulop, Haley, El-Siblani, Zuberi, Grayson, Immelt, Hindery, Dussault, Nigro, Papa, Hsieh, Eisenstein, Knight, and Wheeler are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

32.     By reason of their positions as officers and/or directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its stockholders the fiduciary obligations of good faith, loyalty, and candor and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of the Company and its stockholders so as to benefit all stockholders equally and not in furtherance of their personal interest or benefit.  Each director and officer of the Company owes to the Company and its stockholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

33.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

34.     To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the Company.  By virtue of such duties, the officers and directors of Desktop Metal were required to, among other things:

- ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

- conduct the affairs of the Company in a lawful, efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

- properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results and prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

- remain informed as to how the Company conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with federal and state securities laws; and

- ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable federal, state, and local laws, rules, and regulations.

35. Each Individual Defendant, as a director and/or officer, owed to the Company and its stockholders the fiduciary duties of loyalty, good faith, and candor in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of the Company, the absence of good faith on their part, and a conscious disregard for their duties to the Company and its

stockholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.

36.     In addition, the Company has also adopted a Code of Business Conduct and Ethics (the "Code").  The Code states in its Introduction:

> This Code of Business Conduct and Ethics (the "Code") contains general guidelines for how we work at Desktop Metal, Inc. (the "Company" or "we") consistent with the highest standards of business ethics.  To the extent this Code requires a higher standard than required by commercial practice or applicable laws, rules or regulations, the Company adheres to these higher standards.

> This Code applies to all of our directors, officers and other employees.  We refer to all officers and other employees covered by this Code as "Company employees" or simply "employees," unless the context otherwise requires.  In this Code, we refer to our principal executive officer, principal financial officer, principal accounting officer and controller, or persons performing similar functions, as our "principal financial officers."

37.     The Code goes on to state:

> As a public company we are subject to various securities laws, regulations and reporting obligations.  Both federal law and our policies require the disclosure of accurate and complete information regarding the Company's business, financial condition and results of operations.  Inaccurate, incomplete or untimely reporting will not be tolerated and can severely damage the Company and result in legal liability.

> The Company's principal financial officers and other employees working in the finance department have a special responsibility to ensure that all of our financial disclosures are full, fair, accurate, timely and understandable.  These employees must understand and strictly comply with generally accepted accounting principles and all standards, laws and regulations for accounting and financial reporting of transactions, estimates and forecasts.

38.     As noted in the Company's DEF 14A filed with the SEC on June 17, 2021 (the "2021 Proxy") regarding the Board's oversight with respect to risk management:

> Our Board of Directors is responsible for overseeing our risk management process. Our Board of Directors focuses on our general risk management strategy, the most significant risks facing us, and oversees the implementation of risk mitigation strategies by management. Our Audit Committee is also responsible for discussing our policies with respect to risk assessment and risk management. Our Board of

Directors believes its administration of its risk oversight function has not negatively affected our Board of Directors leadership structure.

39.     Additionally, per the Audit Committee Charter, during the Relevant Period:

The purpose of the Audit Committee (the "Committee") is to assist the Board of Directors (the "Board")  in its oversight of: (i) the integrity of the Company's financial statements; (ii) the Company's compliance with legal and regulatory requirements; (iii) the independent auditor's qualifications and independence; (iv) the performance of the Company's independent auditor; and (v) the design and implementation of the Company's internal audit function, and the performance of the internal audit function after it has been established.

\*        \*        \*

*Form 10-K Review*.  The Committee must review and discuss the annual audited financial statements with management and the independent auditor, including the Company's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations."

\*        \*        \*

*Form 10-Q Review*. The Committee must review and discuss the quarterly financial statements with management and the independent auditor, including the Company's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations."

\*        \*        \*

*Risk Assessment and Risk Management*.   The Committee must discuss the Company's policies with respect to risk assessment and risk management.

\*        \*        \*

*Review of Code of Business Conduct and Ethics*. The Committee must, at least annually, consider and discuss with management and the independent auditor the Company's Code of Business Conduct and Ethics and the procedures in place to enforce the Code of Ethics. The Committee must also consider and discuss and, as appropriate, grant requested waivers from the Code of Business Conduct and Ethics brought to the attention of the Committee, though the Committee may defer any decision with respect to any waiver to the Board.

## SUBSTANTIVE ALLEGATIONS

### BACKGROUND

40.     Desktop Metal purports to offer additive manufacturing technologies focused on the production of end use parts. Its platforms include: Production System, a manufacturing platform using the Company's proprietary Single Pass Jetting technology enabling production quantities of up to millions of parts per year; Shop System, an affordable turnkey binding jetting platform to bring metal 3D printing to machine and job shops; Studio System, an office-friendly metal 3D printing system; and Fiber, a desktop 3D printer using the Company's proprietary Micro Automated Fiber Placement.

41.     On February 16, 2021, the Company acquired EnvisionTEC, a provider of volume production photopolymer 3D printing solutions for end use parts.

### THE INDIVIDUAL DEFENDANTS CAUSE THE COMPANY TO MAKE MATERIALLY FALSE AND MISLEADING STATEMENTS ISSUED DURING THE RELEVANT PERIOD

42.     The Relevant Period begins on March 15, 2021. On that day, Desktop Metal filed with the SEC its annual report on Form 10-K for the period ended December 31, 2020 (the "2020 10-K"). Therein, the Company stated, in relevant part:

> **We may experience difficulties in integrating the operations of EnvisionTEC into our business and in realizing the expected benefits of the EnvisionTEC acquisition.**
>
> In February 2021, we acquired EnvisionTEC, Inc., or EnvisionTEC, and certain of its affiliates. Additional information about our acquisition of EnvisionTEC, which we refer to as the EnvisionTEC Acquisition, are set forth in "Note 21. Subsequent Events" to our consolidated financial statements in this Annual Report on Form 10-
>
> K. The success of the EnvisionTEC Acquisition will depend in part on our ability to realize the anticipated business opportunities from combining the operations of EnvisionTEC with our business in an efficient and effective manner. The integration process could take longer than anticipated and could result in the loss of key employees, the disruption of each company's ongoing businesses, tax costs or inefficiencies, or inconsistencies in standards, controls, information technology systems, procedures and policies, any of which could adversely affect our ability to

maintain relationships with customers, employees or other third parties, or our ability to achieve the anticipated benefits of the EnvisionTEC Acquisition, and could harm our financial performance. If we are unable to successfully or timely integrate the operations of EnvisionTEC with our business, we may incur unanticipated liabilities and be unable to realize the revenue growth, synergies and other anticipated benefits resulting from the EnvisionTEC Acquisition, and our business, results of operations and financial condition could be materially and adversely affected.

We have incurred significant costs in connection with the EnvisionTEC Acquisition. The substantial majority of these costs are non-recurring expenses related to the EnvisionTEC Acquisition. These non-recurring costs and expenses are reflected in the unaudited pro forma condensed combined financial information included in this Annual Report on Form 10-K. We may incur additional costs in the integration of EnvisionTEC's business, and may not achieve cost synergies and other benefits sufficient to offset the incremental costs of the EnvisionTEC Acquisition.

43.     On May 17, 2021, Desktop Metal filed its quarterly report with the SEC on Form 10-Q for the period ended March 31, 2021 (the "1Q21 10-Q"). Therein, the Company stated: "EnvisionTEC's results are included in the Company's consolidated results for the period from February 16, 2021 to March 31, 2021. For this period, EnvisionTEC's net revenues were approximately $5.4 million and net loss was approximately $1.8 million."

44.     The 1Q21 10-Q further stated:

Total revenue for the three months ended March 31, 2021 and 2020 was $11.3 million and $3.4 million, respectively, an increase of $7.9 million, or 234%. The increase in total revenue was attributable to an increase in revenue from both products and services.

We sold more products during the three months ended March 31, 2021 as compared to three months ended March 31, 2020, leading to an approximately 283% increase in product revenue. This was primarily due to product revenue from EnvisionTEC following the close of this acquisition. Additionally, we shipped more units during the first quarter of 2021 compared to the first quarter of 2020.

45.     Moreover, the 1Q21 10-Q stated that there was a material weakness in the Company's internal control over financial reporting and that its "disclosure controls and

procedures are not effective . . . ." Specifically, the report stated the following regarding the

Company's controls and procedures:[1]

### Background and Remediation of Material Weakness

In connection with our evaluation of disclosure controls and procedures covering our consolidated financial statements as of December 31, 2020, we identified material weaknesses in our internal control over financial reporting. We have concluded that material weaknesses exist in our evaluation of disclosure controls and procedures, including internal control over financial reporting, as we do not have the necessary business processes, personnel and related internal controls to operate in a manner to satisfy the accounting and financial reporting requirements of a public company. ***These material weaknesses primarily manifested in the improper segregation of duties relating to the recording of journal entries and the reconciliation of key accounts, as well as the analysis of certain transactions and accounts, and the safeguarding of assets. We identified an additional material weakness related to the design and operating effectiveness of controls over our accounting for significant and complex accounting matters.***

We are focused on designing and implementing effective internal controls measures to improve our evaluation of disclosure controls and procedures, including internal control over financial reporting, and remediate the material weaknesses. In order to remediate these material weaknesses, we have taken and plan to take the following actions:

- the hiring and continued hiring of additional accounting, finance and legal resources with public company experience; and

- implementation of additional review controls and processes requiring timely account reconciliation and analyses of certain transactions and accounts.

These actions and planned actions are subject to ongoing evaluation by management and will require testing and validation of design and operating effectiveness of internal controls over financial reporting over future periods. We are committed to the continuous improvement of our internal control over financial reporting and will continue to review the internal controls over financial reporting.

\*       \*       \*

### Changes in Internal Control Over Financial Reporting

On February 16, 2021, we completed the acquisition of EnvisionTEC. We are in the process of integrating EnvisionTEC into our system of internal control over

---

[1] Unless otherwise stated, all emphasis in bold and italics is added.

financial reporting. Except for the material weaknesses noted above and the acquisition of EnvisionTEC, there were no changes to our internal control over financial reporting (as defined in Rule 13a-15(f) under the Exchange Act) that occurred during the quarter ended March 31, 2021 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

46.    On August 11, 2021, Desktop Metal filed its quarterly report with the SEC on Form 10-Q for the period ended June 30, 2021 (the "2Q21 10-Q"). Therein, the Company stated: "EnvisionTEC's results are included in the Company's consolidated results for the period from February 16, 2021 to June 30, 2021. For this period, EnvisionTEC's net revenues were approximately $15.7 million and net loss was approximately $4.8 million."

47.    Moreover, the 2Q21 10-Q stated that there was a material weakness in the Company's internal control over financial reporting and that its "disclosure controls and procedures are not effective . . . ." Specifically, the report stated the following regarding the Company's controls and procedures:

### **Background and Remediation of Material Weakness**

In connection with our evaluation of disclosure controls and procedures covering our consolidated financial statements as of December 31, 2020, we identified material weaknesses in our internal control over financial reporting. We have concluded that material weaknesses exist in our evaluation of disclosure controls and procedures, including internal control over financial reporting, as we do not have the necessary business processes, personnel and related internal controls to operate in a manner to satisfy the accounting and financial reporting requirements of a public company. ***These material weaknesses primarily manifested in the improper segregation of duties relating to the recording of journal entries and the reconciliation of key accounts, as well as the analysis of certain transactions and accounts, and the safeguarding of assets. We identified an additional material weakness related to the design and operating effectiveness of controls over our accounting for significant and complex accounting matters.***

We are focused on designing and implementing effective internal controls measures to improve our evaluation of disclosure controls and procedures, including internal control over financial reporting, and remediate the material weaknesses. In order to remediate these material weaknesses, we have taken and plan to take the following actions:

- the hiring and continued hiring of additional accounting, finance and legal resources with public company experience; and

- implementation of additional review controls and processes requiring timely account reconciliation and analyses of certain transactions and accounts.

These actions and planned actions are subject to ongoing evaluation by management and will require testing and validation of design and operating effectiveness of internal controls over financial reporting over future periods. We are committed to the continuous improvement of our internal control over financial reporting and will continue to review the internal controls over financial reporting.

48.     The above statements identified in ¶¶ 42-47 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, the Individual Defendants failed to disclose to investors that: (1) there were deficiencies in EnvisionTEC's manufacturing and product compliance practices and procedures; (2) the foregoing deficiencies presented a material risk to the commercialization of EnvisionTEC's products; and (3) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**DISCLOSURES AT THE END OF THE RELEVANT PERIOD**

49.     On November 8, 2021, after the market closed, Desktop Metal disclosed that it was conducting an internal investigation into certain matters, including "manufacturing and product compliance practices and procedures with respect to a subset of its photopolymer equipment and materials at its EnvisionTec US LLC facility." In a Form 8-K filed with the SEC, the Company stated:

> On November 4, 2021, the Audit Committee of the Board of Directors of Desktop Metal, Inc. (the "Company") engaged a third party to conduct an independent internal investigation as a result of a whistleblower complaint relating to, among other matters, manufacturing and product compliance practices and procedures with respect to a subset of its photopolymer equipment and materials at its EnvisionTec US LLC facility in Dearborn, Michigan. While the investigation

remains on-going, the Company has taken initial actions, including implementing changes in the management of and procedures associated with manufacturing the applicable products. Based on the investigation to date, the Company does not believe the matters involved will have a material impact on the Company, its financial statements or its business.

50.     Also on November 8, 2021, the Company stated that defendant El-Siblani had resigned as CEO of EnvisionTec US LLC and as a director of Desktop Metal.

51.     On this news, the Company's stock fell $0.39, or 4%, to close at $8.81 per share on November 9, 2021.

52.     Then, on November 15, 2021, after the market closed, the Company stated that it would notify the FDA of "compliance issues with certain shipments of EnvisionTEC's Flexcera dental resins and its PCA4000 curing box." Specifically, in its Form 10-Q for the period ended September 30, 2021, the Company stated:

> On November 4, 2021, the Audit Committee of the Board of Directors engaged a third party to conduct an independent internal investigation as a result of a whistleblower complaint relating to, among other matters, manufacturing and product compliance practices and procedures with respect to a subset of its photopolymer equipment and materials at its EnvisionTec US LLC facility in Dearborn, Michigan. While the investigation remains on-going, the Company has taken initial actions, including implementing changes in the management of and procedures associated with manufacturing the applicable products. Based on the investigation to date, the Company does not believe the matters involved will have a material impact on the Company, its financial statements or its business.

> On November 5, 2021, Ali El Siblani notified the Company of his intent to resign as a member of the Company's Board of Directors and as an employee of the Company in his role as Chief Executive Officer of EnvisionTec US LLC. The decision of Mr. Siblani was not the result of any disagreement relating to the Company's operations, policies or practices.

> As of November 12, 2021, based on compliance issues with certain shipments of EnvisionTEC's Flexcera dental resins and its PCA4000 curing box, the Company has determined that it will notify the FDA and consult with them on the appropriate voluntary market action with respect to these products. The Company does not expect the costs of any such market action to have a material impact on its financial statements.

53.     On this news, the Company's stock fell $1.19, or 15%, to close at $6.83 per share on November 16, 2021, on unusually heavy trading volume.

**THE MATERIALLY FALSE AND MISLEADING PROXY STATEMENT ISSUED BY THE INDIVIDUAL DEFENDANTS**

54.     In addition to the above false and misleading statements issued and/or caused to be issued by the Individual Defendants, the Individual Defendants likewise caused the Company to issue a false and misleading proxy statement, which sought shareholder votes for, *inter alia,* director re-election.

55.     On June 17, 2021, the Individual Defendants caused the Company to file with the SEC on Form DEF 14A and disseminate to shareholders the 2021 Proxy in connection with the Company's annual shareholder meeting.  The Individual Defendants drafted, approved, reviewed, and/or signed the 2021 Proxy before it was filed with the SEC and disseminated to Desktop Metal's shareholders.  The Individual Defendants knew or were deliberately conscious in not knowing, that the 2021 Proxy was likewise materially false and misleading.

56.     Among other things, the 2021 Proxy provided information about the director nominees up for election, Defendants Grayson, Papa, and Zuber.  In addition, the 2021 Proxy described director responsibilities, the duties of each Board committee, Board risk assessment and management, and explicitly referenced the Code, which includes special ethical obligations regarding financial reporting such that all SEC filings are to be accurate.

57.     The 2021 Proxy was false and misleading because it solicited Desktop Metal shareholder votes for director reelection even though the Individual Defendants were aware, but had failed to disclose that:  (1) there were deficiencies in EnvisionTEC's manufacturing and product compliance practices and procedures; (2) the foregoing deficiencies presented a material risk to the commercialization of EnvisionTEC's products; and (3) as a result of the foregoing, the

Individual Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## DAMAGES TO DESKTOP METAL

58.     As a result of the Individual Defendants' wrongful conduct, Desktop Metal disseminated false and misleading statements and omitted material information to make such statements not false and misleading when made.  The improper statements have devastated Desktop Metal's credibility.  Desktop Metal has been, and will continue to be, severely damaged and injured by the Individual Defendants' misconduct.

59.     Indeed, the Individual Defendants' false and misleading statements as alleged herein, have subjected the Company to costs and expenses in connection with the: (1) Securities Class Action; (2) internal investigation by the Company; and (3) notification to the FDA regarding its non-compliance.

60.     As a direct and proximate result of the Individual Defendants' actions as alleged herein, Desktop Metal's market capitalization has been substantially damaged, losing millions of dollars in value as a result of the conduct described herein.

61.     Moreover, these actions have irreparably damaged Desktop Metal's corporate image and goodwill.  For at least the foreseeable future, Desktop Metal will suffer from what is known as the "liar's discount," a term applied to the stocks of companies who have been implicated in illegal behavior and have misled the investing public, such that Desktop Metal's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## PLAINTIFFS' DEMAND AND DERIVATIVE ALLEGATIONS

62.     Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

63.     Plaintiffs bring this action derivatively in the right and for the benefit of the Company to redress the Individual Defendants' breaches of fiduciary duties.

64.     Plaintiffs are owners of Desktop Metal common stock and were owners of Desktop Metal common stock at all times relevant hereto.

65.     Plaintiffs will adequately and fairly represent the interests of the Company and its stockholders in enforcing and prosecuting its rights.

66.     As a result of the facts set forth herein, Plaintiffs have not made any demand on the Desktop Metal Board to institute this action against the Individual Defendants.

67.     At the time this action was commenced, the Board consisted of ten directors: Defendants Fulop, Zuberi, Grayson, Immelt, Hindery, Dussault, Nigro, Papa, Hsieh, and Eisenstein (the "Director Defendants").  All ten members of the Board are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action, such that making a demand would be a futile and useless act.

**DEMAND IS FUTILE AS TO THE DIRECTOR DEFENDANTS BECAUSE THEY EACH FACE A SUBSTANTIAL LIKELIHOOD OF LIABILITY**

68.     The Director Defendants all face a substantial likelihood of liability for their individual misconduct.  The Director Defendants were directors throughout the time of the false and misleading statements, and as such had a fiduciary duty to ensure that the Company's SEC filings, press releases, and other public statements and presentations on behalf of the Company concerning its business, operations, prospects, internal controls, and financial statements were accurate.

69.     Moreover, the Director Defendants, as directors, owed a duty to, in good faith and with due diligence, exercise reasonable inquiry, oversight, and supervision to ensure that the Company's internal controls were sufficiently robust and effective (and were being implemented

effectively), and to ensure that the Board's duties were being discharged in good faith and with the required diligence and due care. Instead, they knowingly and consciously reviewed, authorized, and/or caused the publication of the materially false and misleading statements discussed above that caused the Company's stock to trade at artificially inflated prices.

70. The Director Defendants' conscious and knowing making or authorization of false and misleading statements, failure to timely correct such statements, failure to take necessary and appropriate steps to ensure that the Company's internal controls were sufficiently robust and effective (and were being implemented effectively), and failure to take necessary and appropriate steps to ensure that the Board's duties were being discharged in good faith and with the required diligence constitute breaches of the fiduciary duties of loyalty and good faith for which the Director Defendants face a substantial likelihood of liability. If the Director Defendants were to bring a suit on behalf of Desktop Metal to recover damages sustained as a result of this misconduct, they would expose themselves to significant liability. This is something they will not do. For this reason, demand is futile as to the Director Defendants.

**DEFENDANTS FULOP AND HINDERY LACK INDEPENDENCE**

71. As an initial matter, Desktop Metal has conceded in its SEC filings that Fulop and Hindery are not independent directors of the Company. The 2021 Proxy states:

> Our Board of Directors has determined that Ms. Grayson and Messrs. Dussault, Hsieh, Immelt, Knight, Papa, Wheeler and Zuberi are "independent directors" as defined in the NYSE listing standards and applicable SEC rules. Our independent directors will have regularly scheduled meetings at which only independent directors are present.

The 2021 Proxy does not include Defendants Fulop and Hindery in the above paragraph, thereby admitting that they lack independence.

72. In addition to this lack of independence, Fulop is not disinterested for purposes of demand futility because his principal occupation is CEO and Chairman of the Board of Desktop

Metal.  According to the Company's SEC filings, in 2019 and 2020, Fulop received total compensation of $350,540 and $483,008, respectively.  These amounts are material to him.

73.    Defendant Fulop is incapable of considering a demand to commence and vigorously prosecute this action because he faces additional substantial likelihood of liability as he is a named defendant in the Securities Class Action.

74.    Defendant Hindery also lacks independence given he selected Desktop Metal to merge with Trine Acquisition Corp., a special purpose acquisition company led by him.

**DEFENDANTS FULOP, HINDERY, ZUBERI, IMMELT, HSIEH, AND PAPA ARE UNABLE TO INDEPENDENTLY CONSIDER A DEMAND DUE TO THEIR BUSINESS AFFILIATIONS**

75.    As demonstrated by the following chart of beneficial share ownership below, Defendants Fulop, Hindery, Zuberi, Immelt, Hsieh, and Papa are inextricably linked through their business dealings when it comes to Desktop Metal and each other. As such, Defendants Fulop, Hindery, Zuberi, Immelt, Hsieh, and Papa lack the independence required to impartially consider a demand by Plaintiff due to their longstanding business relationships.

| Name of Beneficial Owner | Shares Beneficially Owned | |
|---|---|---|
| | Number of Shares of Class A Common Stock Beneficially Owned | Percentage Ownership of Outstanding Class A Common Stock |
| **5% or Greater Stockholders** | | |
| Entities affiliated with New Enterprise Associates | 28,416,088 | 11.11% |
| Entities affiliated with Lux Ventures | 18,651,974 | 7.29% |
| KPCB Holdings, Inc., as nominee | 17,856,665 | 6.98% |
| Entities affiliated with Google Ventures | 14,302,438 | 5.59% |
| **Named Executive Officers and Directors** | | |
| Ric Fulop | 21,981,930 | 8.59% |
| Steve Billow | 591,530 | * |
| Elizabeth Linardos | 503,625 | * |
| Scott Dussault | — | — |
| Ali El Siblani | 5,036,142 | 1.97% |
| Dayna Grayson | — | — |
| Leo Hindery, Jr. | 2,897,317 | 1.13% |
| Wen Hsieh | 17,856,665 | 6.98% |
| Jeff Immelt | 259,075 | * |
| Byron Knight | — | — |
| Stephen Nigro | — | — |
| Steve Papa | — | — |
| Andy Wheeler | — | — |
| Bilal Zuberi | — | — |
| All executive officers and directors as a group (17 persons) | 49,590,730 | 19.25% |

76.     Defendant Immelt serves as Venture Partner at New Enterprise Associates, the Company's largest shareholder.

77.     Likewise, Defendant Zuberi serves as a partner at Lux Capital, the Company's third largest shareholder behind only New Enterprise Associates and Defendant Fulop.

78.     Meanwhile, Defendant Hsieh serves as General Partner of KPCB, the Company's fourth largest shareholder.

79. Defendant Hindery owns almost 3 million shares of Desktop Metal and is one of the Company's largest individual shareholders behind only Defendants Fulop, Hsieh, and El Siblani.

80. Finally, Defendant Papa acts as the trustee for a number of trusts set up by Defendant Fulop.

81. The business affiliations of Defendants Fulop, Hindery, Zuberi, Immelt, Hsieh, and Papa and the financial benefits they have each reaped because of these affiliations, make it impossible for any of them to impartially consider a demand by Plaintiff.

**DEFENDANTS FULOP, ZUBERI, GRAYSON, IMMELT, HINDERY, DUSSAULT, NIGRO, PAPA, AND HSIEH ARE NOT DISINTERESTED AS THEY FACE A SUBSTANTIAL LIKELIHOOD OF LIABILITY**

82. Defendants Fulop, Zuberi, Grayson, Immelt, Hindery, Dussault, Nigro, Papa, and Hsieh are not disinterested because they each face a substantial likelihood of liability in light of their false and misleading statements as outlined above. All of these defendants signed the false and misleading 2020 10-K filed with the SEC on March 15, 2021. In addition, defendant Fulop signed the false and misleading Forms 10-Q filed with the SEC on May 17, 2021 and August 11, 2021.

**DEMAND IS EXCUSED AS TO DEFENDANTS ZUBERI, IMMELT, AND DUSSAULT BECAUSE AS MEMBERS OF THE AUDIT COMMITTEE THEY FACE A SUBSTANTIAL LIKELIHOOD OF LIABILITY**

83. Defendants Zuberi, Immelt, and Dussault, as members of the Audit Committee during the Relevant Period, participated in and knowingly approved the filing of false financial statements. More specifically, as members of the Audit Committee, Defendants Zuberi, Immelt, and Dussault were obligated to review the Company's annual and quarterly reports to ensure their accuracy. Instead, Defendants Zuberi, Immelt, and Dussault, as members of the Audit Committee, failed to ensure the integrity of the Company's financial statements and financial reporting process, the Company's systems of internal accounting and financial controls, and other financial

information provided by the Company, as required by the Audit Committee Charter.  For this demand is futile as to Defendants Zuberi, Immelt, and Dussault.

## COUNT I
### Against the Individual Defendants for
### Breach of Fiduciary Duty

84.     Plaintiffs incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

85.     The Individual Defendants owed and owe Desktop Metal fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed and owe Desktop Metal the highest obligation of loyalty, good faith, due care, oversight, and candor.

86.     All of the Individual Defendants violated and breached their fiduciary duties of loyalty, good faith, due care, oversight, and candor.

87.     Each of the Individual Defendants had actual or constructive knowledge of and failed to disclose that:  (1) there were deficiencies in EnvisionTEC's manufacturing and product compliance practices and procedures; (2) the foregoing deficiencies presented a material risk to the commercialization of EnvisionTEC's products; and (3) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis. These actions caused severe risks to the Company's financial viability and were causing harm to the Company by subjecting the Company to the Securities Class Action.  The Individual Defendants' actions (and inactions) could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

88.     The Individual Defendants consciously caused or allowed Desktop Metal to lack requisite internal controls, and, as a result, the Company made false and misleading statements regarding EnvisionTEC.

89.     The Individual Defendants consciously failed to supervise, to exert internal controls, and consciously disregarded their responsibilities involving the Company.

90.     As a direct and proximate result of the Individual Defendants' conscious failure to perform their fiduciary obligations, Desktop Metal has sustained significant damages.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company. The Individual Defendants breached their fiduciary duties owed to Desktop Metal and its shareholders by willfully, consciously, and/or intentionally failing to perform their fiduciary duties.  They caused the Company to waste valuable assets and unnecessarily expend corporate funds.  They also failed to properly oversee Desktop Metal's business, rendering them personally liable to the Company.

## COUNT II
### Against the Individual Defendants for
### Violations of § 14(A) of the Exchange Act and SEC Rule 14a-9

91.     Plaintiffs incorporate by reference and realleges each and every allegation set forth above, as though fully set forth herein.

92.     Rule 14a-9, promulgated pursuant to Section 14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

93.     The 2021 Proxy violated Section 14(a) and Rule 14a-9 because it solicited Desktop Metal shareholder votes for, *inter alia,* director reelection, while simultaneously misrepresenting and/or failing to disclose the Company's shortcomings in connection with EnvisionTEC.

94.     As alleged herein, in the 2021 Proxy, the Individual Defendants specifically referenced the Code, which includes special ethical obligations regarding financial reporting such

that all SEC filings are to be accurate.  Because the Company, under the Individual Defendants'
direction and on their watch, was issuing false and misleading statements, the Individual
Defendants affirmatively violated the Code. The 2021 Proxy failed to disclose that express terms
of the Code were being violated.

95.     The Individual Defendants made untrue statements of material facts and omitted to
state material facts necessary to make the statements that were made not misleading in violation
of Section 14(a) and Rule 14a-9.  By virtue of their positions within the Company and/or roles in
the process and in the preparation of the 2021 Proxy, the Individual Defendants were aware of this
information and of their duty to disclose this information in the 2021 Proxy.

96.     The Individual Defendants knew that the statements contained in the 2021 Proxy
were materially false and misleading.

97.     The omissions and false and misleading statements in the 2021 Proxy are material
in that a reasonable shareholder would consider them important in deciding how to vote on the re-
election of directors.  In addition, a reasonable investor would view a full and accurate disclosure
as significantly altering the "total mix" of information made available in the 2021 Proxy and in
other information reasonably available to shareholders.

98.     As a direct and proximate result of the dissemination of the false and/or misleading
2021 Proxy the Individual Defendants used to obtain shareholder approval of and thereby re-elect
directors, nominal defendant Desktop Metal suffered damage and actual economic losses (*i.e.*,
wrongful re-election of directors) in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment as follows:

A.      Declaring that Plaintiffs may maintain this derivative action on behalf of Desktop
Metal and that Plaintiffs are proper and adequate representatives of the Company;

B.      Awarding the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties and violations of the federal securities laws;

C.      Granting appropriate equitable relief to remedy the Individual Defendants' breaches of fiduciary duties and other violations of law;

D.      Awarding to Plaintiffs the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, and costs and expenses; and

E.      Granting such other and further relief as the Court deems just and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

Dated:  July 12, 2022                    Respectfully submitted,

**LEVI & KORSINSKY, LLP**

  */s/ Shannon L. Hopkins*
Shannon L. Hopkins
1111 Summer Street, Suite 403
Stamford, CT 06905
Telephone: (203) 992-4523
Facsimile: (212) 363-7171
Email: shopkins@zlk.com

**BRAGAR EAGEL & SQUIRE, P.C.**
Melissa A. Fortunato
Gabriela A. Cardé
810 Seventh Avenue, Suite 620
New York, NY 10019
Telephone: (212) 308-5858
Facsimile: (212) 214-0506
Email: fortunato@bespc.com
             carde@bespc.com

*Attorneys for Plaintiff*

**VERIFICATION**

I, Wilfred Keyser, hereby verify that I have authorized the filing of the attached Verified Stockholder Derivative Complaint, that I have reviewed the Verified Stockholder Derivative Complaint and that the facts therein are true and correct to the best of my knowledge, information and belief. I declare under penalty of perjury that the foregoing is true and correct.

Dated: 07/07/2022 _____

*Wilfred R Keyser III*
Wilfred R Keyser III (Jul 7, 2022 14:37 EDT)
_____
Wilfred Keyser

# VERIFICATION

I, Reid Klootwyk, hereby verify that I have authorized the filing of the attached Verified Stockholder Derivative Complaint, that I have reviewed the Verified Stockholder Derivative Complaint and that the facts therein are true and correct to the best of my knowledge, information and belief. I declare under penalty of perjury that the foregoing is true and correct.

Dated: 07/07/2022
_____

_____
reid klootwyk (Jul 7, 2022 10:01 EDT)
Reid Klootwyk